[No. 649. Decided January 6, 1893.]

WOO DAN, *Appellant*, v. SEATTLE ELECTRIC RAILWAY AND POWER COMPANY, *Respondent.*

APPEAL — HARMLESS ERROR — ACTION FOR DAMAGES — CONTRIBU-
TORY NEGLIGENCE — INSTRUCTIONS.

Irrelevant and immaterial testimony admitted over objection will not justify a reversal when it does not appear to be in any way prejudicial to the appellant.

In an action for damages where the theory of plaintiff's case is, that an electric car had slowed down in response to his signal, and that when he was about to jump on the rate of speed was suddenly increased to its usual rate, whereby he was thrown under the wheels and injured, it is not error for the court to charge that "if the jury believe from the evidence that the plaintiff attempted to board the front platform of the car while the same was running at its ordinary rate of speed, then the plaintiff was guilty of contributory negligence."

It is not error to charge the jury that if plaintiff, without signaling, attempted to board an electric car while in motion, and was injured, he could not recover.

It is not error to refuse to give a charge to the jury which assumes facts concerning which there is no testimony in the case.

*Appeal from Superior Court, King County.*

*Finch, Snook & Finch*, for appellant.

*Julius F. Hale*, and *Wiley, Scott & Bostwick*, for respondent.

The opinion of the court was delivered by

STILES, J.—The second paragraph of the complaint in this action was as follows:

"That said plaintiff, on or about the 6th day of February, 1891, sought, solicited and asked for passage on one of the cars of the said company on its said road, from Fremont to Seattle; that said plaintiff sought, solicited and asked for passage of said company on said car by motioning and signalling to the 'motor·man' operating said car; that, at the time said plaintiff signalled to said motor man as aforesaid, said car was in rapid motion at some distance from said plaintiff, and approaching said plaintiff; that said motor man saw said plaintiff standing near said track signalling said motor man to stop said car, and that said motor man, in obedience to said signal, diminished the speed of said car to a rate of speed near approaching a stop, and that while said car was moving at the rate of speed last aforesaid, said plaintiff with due care and caution undertook to board the front platform of said car, and that while said plaintiff was in the act of boarding said car as aforesaid, and before said plaintiff had fully landed on the platform of said car, said motor man, suddenly and without warning or notice to said plaintiff, and negligently and carelessly, and willfully and maliciously set said car into fast and rapid motion, throwing and causing said plaintiff to fall beneath said car, with his leg under the front wheel thereof, and that when said plaintiff fell under said car, with his leg under the wheel of said car and across the rail of said track as aforesaid, the said wheel of said car caught, ran over and mangled the leg of said plaintiff so that, by reason of said injury, said plaintiff, of necessity, had to have his leg amputated, severed and cut off from said plaintiff's body."

At the trial, the only evidence to sustain these allegations was, in the first place, the statement of the plaintiff and several other persons, some of whom were in the car, and others who were in the neighborhood, that plaintiff stood along side of the railway track, in a cut made through a bank of earth which was several feet high, until the car

approached near enough for him to attempt to jump on. The bank was high enough so as to hide the plaintiff until the car got within a few feet of him, and rose within eighteen or twenty inches of the side of the car. The cut was some ten or fifteen feet in width. The usual stopping places of cars passing upon that track were to the right and left of the cut, which does not appear to have been at any street crossing. The car approached the plaintiff upon a sharp curve, around which it ran .with somewhat less than its usual speed, and after it had rounded the curve the speed was increased for the purpose of attaining the usual speed of about seven miles an hour. The plaintiff alone testified to the fact that he raised his hand as a signal that he desired the car to stop; that the motor man saw his signal; that the car at the time it reached him was going slowly, and that at about the time he attempted to get on, its speed was suddenly increased by the motor man applying the full force of the electric current. He says that he caught hold of the front rail of the car and planted his feet upon the step. Whether he got his feet on or not, the fact is that he was in some way thrown off the car, and struck by the front end of the body of the car, which threw him against the bank of earth, whence he fell to the ground, and under the car wheels.

The first ground of error alleged is, that the court permitted the respondent to elicit from several witnesses answers to questions like these:

"1. State to the jury whether this place where the Chinaman attempted to board this car was a safe place in your opinion, a safe place to board a car in motion.

"2. What would you say as to the manner in which a person should act if they wanted to board a car at that place, to get on the front platform?

"3. You may state to the jury whether, at the time this Chinaman jumped to get aboard the car at that place, it was a safe and careful thing for him to do."

Abstractly, all such questions must be regarded as imma-
terial and irrelevant, and therefore not proper to be asked
or answered.  The gist of this action was not an alleged
injury caused by the fault of the plaintiff while attempting
to board the moving car, but that while he was attempting
to do so, the motor man, with knowledge of his attempt,
suddenly forced the car to a high rate of speed and thereby
caused the plaintiff's fall.   It was not necessary to ask such
questions, either, because both court and jury at this time
in legal experience, will take notice that to attempt to board
a moving street car, especially by its front platform, is dan-
gerous under any circumstances; and if an intending pas-
senger, in attempting to get upon a moving car, is injured
simply by his slipping down, he has no one to blame but
himself.   But such questions in such a case could not be
materially prejudicial.

The next objection is to the 10th instruction that—

"If the jury believe from the evidence that the plaintiff
attempted to board the front platform of the car while the
same was running at its ordinary rate of speed, then the
plaintiff was guilty of contributory negligence, and if you
so find, your verdict will be for the defendant."

The argument which appellant makes in support of his
objection to this instruction is defective for the reason that
it admits that the contention of the appellant was that the
car was not at the time of his accident running at its ordi-
nary rate of speed, but at a slower rate at which it would
not necessarily have been negligence for the appellant to
attempt to get upon it.

It is not always negligence *per se* for a person in good
physical condition and unincumbered to attempt to get
upon a moving street car.  *Eppendorf v. Brooklyn, etc.,
R. R. Co.*, 69 N. Y. 195; *Briggs v. Union St. Ry. Co.*,
148 Mass. 72 (19 N. E. Rep. 19); *Corlin v. West End St.
Ry. Co.*, 154 Mass. 197 (27 N. E. Rep. 1000); *Morison v.*

*Broadway & S. A. R. R. Co.*, 8 N. Y. Supp. 436. Usually the question of negligence in getting upon a moving car is for the jury, rather than for the court; but the case of the plaintiff was not injured by the court's telling the jury in this instance that if plaintiff attempted to mount the car when it was going at its ordinary rate of speed, which was clearly established to be seven or eight miles an hour, he was guilty of contributory negligence, because the whole theory of appellant was that the car had slowed down in response to his signal, and that when he was about to jump on the rate of speed was suddenly increased to its usual rate. If the rate was not reduced and the car was merely proceeding at its usual speed, no negligence was proved, and appellant's injuries must have come in attempting to get upon a car moving so rapidly. As we said before, common knowledge teaches that to get upon any moving car is dangerous, and to mount a slowly moving car is not, *per se*, a negligent act. But under all the circumstances, as shown by the appellant himself in this case, the court was fully justified in telling the jury that it would have been negligence for appellant to attempt to get upon a car when running at a speed of seven or eight miles an hour.

The twelfth instruction was not open to objection. The portion complained of informed the jury that it was the duty of a person seeking to take passage on a street car to make such signal as would attract the attention of the person in charge, and that if, without signalling, he attempted to board the car while in motion, and was injured, he could not recover. This is obviously true, since, under such a state of facts, there could be no negligence on the part of the person in charge.

Several requests to charge made by the appellant are all open to the objection that they assume facts concerning which there was no testimony in the case, and are appar-

ently directed to an attempt to get the court to say to the jury that certain assumed facts would constitute negligence on the part of the motorman.    Such is not the province of the court in charging the jury, at least, unless the facts upon which the charge is based are in evidence and are undisputed.

We find no error, and therefore affirm the judgment.

ANDERS, C. J., and DUNBAR and HOYT, JJ., concur.

SCOTT, J., concurs in the result.