[No. 5223.   Decided January 16, 1905.]

WILEY H. YOUNG, *by his Guardian ad Litem,* MARION G. YOUNG, *Respondent,* v. TERANCE O'BRIEN, *Appellant.*[1]

MASTER AND SERVANT—NEGLIGENCE—FALL OF ELEVATOR—NEGLIGENCE OF FELLOW SERVANT—EVIDENCE—SUFFICIENCY. In an action for injuries sustained by an elevator boy through the starting of the elevator by the janitor after the completion of repairs, there is no evidence of negligence by the janitor requiring the submission of instructions relating to fellow servants, where the janitor testifies that, after the repairs were completed, he untied the lever, which suddenly flew over before he could stop it, and the only other evidence tending to show neglect of the janitor being that the accident might have been caused by suddenly throwing over the lever instead of starting it slowly.

SAME—SCOPE OF EMPLOYMENT—INSTRUCTIONS. It is not error to refuse an instruction to the effect that if the plaintiff, an elevator boy, injured in the fall of an elevator, was outside of the scope of his employment at the time of the accident, he could not recover, where it appears that he entered the elevator to take charge of it after the completion of repairs, according to his usual custom, and where the court instructed that, in order to find for the plaintiff, the jury must find that he was in the elevator in the course of his employment.

[1]Reported in 79 Pac. 211.

SAME — FALL OF ELEVATOR — INSPECTION — FAILURE OF SAFETY CLUTCHES TO OPERATE—CAUSE OF ACCIDENT—INSTRUCTIONS. In an action for injuries caused by the fall of an elevator, it is not error to refuse to instruct that the fact that safety clutches did not work was not proof of negligence unless it appeared that an inspection would have disclosed their failure to operate, where there was no express request for such instruction, and the jury were properly instructed as to the duty of inspection, and that they could not infer that the machinery was defective from the mere fact of an accident, but must find a defect which was the proximate cause of the injury.

SAME—ASSUMPTION OF RISKS—INSTRUCTIONS. Instructions upon the assumption of risks by a servant are not objectionable as being limited to risks known to him at the time of entering the employment, when they plainly state that the servant assumes the risks of dangers known to him.

APPEAL AND ERROR—TRIAL—INSTRUCTIONS—HARMLESS ERROR. It is not error to refuse requested instructions that are covered by instructions already given.

APPEAL AND ERROR—EVIDENCE—FAILURE TO OBJECT. Error cannot be predicated upon the admission of testimony received without objection or motion to strike.

DAMAGES—VERDICT WHEN NOT EXCESSIVE. A verdict for $1,350 for injuries sustained in the fall of an elevator will not be disturbed as excessive where the plaintiff was severely injured in his foot, which injury might be troublesome for a long time, and the weakness in his foot decreased his earning ability as a carpenter, since it does not appear to be the result of passion or prejudice.

Appeal from a judgment of the superior court for King county, Albertson, J., entered January 19, 1904, upon the verdict of a jury for $1,350 damages for personal injuries sustained by an employe through the fall of an elevator. Affirmed.

*Piles, Donworth & Howe* and *John P. Hartman,* for appellant, contended, among other things, that the plaintiff cannot recover, because outside the scope of his employment in going into the elevator without authority. Sher-

man & Red., Negligence, 207; Labatt, Master and Servant, 337; *Goff v. Chippewa etc. R. Co.,* 86 Wis. 237, 56 N. W. 465; *Olson v. Minneapolis etc. R. Co.,* 76 Minn. 149, 78 N. W. 975, 48 L. R. A. 796; *Boyd v. Blumenthal,* 3 Penn. (Del.) 564, 52 Atl. 330. The instructions as to the safety clutches should have been given. *Kaye v. Rob Roy etc. Co.,* 4 N. Y. Supp, 571; *Hart v. Naumburg,* 123 N. Y. 641, 25 N. E. 385; *Stackpole v. Wray,* 77 N. Y. Supp. 633; *Spees v. Boggs,* 198 Pa. 112, 47 Atl. 875, 82 Am. St. 792, 52 L. R. A. 933. Instruction No. 14 should have been given. *Patton v. Texas etc. R. Co.,* 179 U. S. 658, 21 Sup. Ct. 275; *Hansen v. Seattle Lum. Co.,* 31 Wash. 604, 72 Pac. 457.

*Tucker & Hyland* and *J. W. McBurney,* for respondent.

HADLEY, J.—This action was orought to recover damages for personal injuries alleged to have been received by respondent, the elevator boy who operated the passenger elevator for the Sullivan building, in the city of Seattle. The injuries were received through the falling of the elevator. The appellant had the exclusive charge and management of the building, including the elevator. Respondent charges that appellant negligently permitted the elevator to be and remain in a defective and unsafe condition, which fact was unknown to respondent, and that, by reason of such negligence, he was injured. The appellant pleads assumption of the risk and contributory negligence on the part of respondent. The cause was tried before the court and a jury. A verdict was returned in favor of respondent, appellant moved for a new trial, which was denied, and judgment was rendered for the amount of the verdict. This appeal is from the judgment.

It is assigned that the court erred in failing to instruct the jury, as requested by appellant, in regard to negligence

of the fellow servant. This contention is based upon the claim that there was sufficient evidence of negligence on the part of the janitor of the building to warrant the submission to the jury of the question of negligence of a fellow servant. The evidence shows that, on the day of the accident, the elevator had been closed for repairs. No attempt to operate it had been made during that day until about the time of the accident. When the party who, in behalf of appellant, superintended the repairs had finished his work, he called for respondent to take charge of the elevator. This was about two o'clock p. m., and respondent had been waiting about the building to return to his duties as soon as the repairs were completed. At the moment the work was completed, he was not present at the elevator, but was in the building. Not seeing him when he was called, the janitor, who was, also, accustomed to handling the elevator, was requested to start it. He prepared to do so, and a moment later respondent returned, and was admitted to the cage by the janitor. The latter moved the lever, and the elevator became at once seemingly unmanageable. The testimony is to the effect that the operating mechanism did not respond to the movements of the lever, and that the cage ascended and descended almost with the rapidity of a shot from a gun. This occurred two or three times, when it struck with great force at the top of the building, and then fell to the bottom of the elevator tunnel. There was testimony to the effect that, if the lever had been suddenly thrown over without allowing the air to pass out slowly, the result might have been the same as what occurred at the time of this accident. It is, therefore, argued that the proper method was to move the lever slowly to one side until the air had passed out. The conclusion drawn from the argument is that, since the elevator per-

formed as it did, its action must have been due to a too
sudden movement of the lever by the janitor, who, it is
claimed, was respondent's fellow servant. The argument
is, however, a mere speculative one so far as the testimony
in the case is concerned. There was no testimony to the
effect that the lever was moved suddenly or far over. The
respondent testified as follows:

"Q. How was the elevator door? A. It was not quite
shut; it was a little ajar; and I came around the corner
and just after he noticed me, I walked up to the door and
he opened it, and I went inside and he started to throw
the lever over, and we went up to the second floor, as near
as I can remember."

The janitor himself testified as follows:

"Q. Mr. Marten, in what manner did you use this
lever when you started this elevator going this day? A.
In the first place, the lever was tied down with a piece of
rope, to keep it from working up; and as I untied the lever
the lever flew over before I had hardly a chance to get hold
of the lever—it flew over, and I grabbed it as quick as pos-
sible, and she began dancing up and down, as I told you
before. Q. To what extent did you push it one way or
the other? A. Just a little ways over; I always did be-
cause I had run elevators so many times, and I never threw
it right over."

The foregoing was the evidence on the subject, and it was
insufficient to raise the question of neglect on the part of
the janitor in the movement of the lever.

There was, also, testimony to the further effect that,
when the elevator struck the beams at the top of the build-.
ing, the ropes might have been thrown off so that the gov-
ernor and safety clutches would not work. Such testi-
mony was in the nature of a mere opinion or argument that
the accident might have so happened. Granting, for the
moment, that it did so happen, the value of the testimony

must be based upon the theory that the janitor had been previously neglectful in the manner of handling the lever. There was, however, no testimony that the ropes were thrown off. The two men who cleared away the wreck, and started the elevator after the accident, testified at the trial. If the ropes had been thrown off, it may reasonably be supposed that they would have discovered it, but they did not so testify. There was, therefore, no tangible evidence of neglect on the part of the fellow servant to be submitted to the jury. An instruction upon that subject would have left the jury to speculate thereon without evidence. Although a requested instruction may contain a correct statement of the law, it is not error to refuse it, when there is no evidence before the jury on the particular subject. *Woo Dan v. Seattle Electric R. etc. Co.,* 5 Wash. 466, 32 Pac. 103; *Einseidler v. Whitman County,* 22 Wash. 388, 60 Pac. 1122; *Smith v. Seattle,* 33 Wash. 481, 74 Pac. 674.

It is also urged as error that the court refused to instruct the jury, as requested, that, if the respondent at the time of the accident was outside the scope of his employment and if his position in the elevator was at the time unauthorized by appellant, he could not recover. We think there was no evidence upon which to base such an instruction. As already stated, the respondent was in waiting to take charge of the operation of the elevator the moment the repairs were completed. The evidence further shows conclusively that he had done this upon many occasions before when the elevator was out of repair, and that appellant expected him to be in readiness to resume his duties as soon as the machine was ready for operation. On this particular occasion, appellant's representative in charge of the repairs called for respondent as soon as he was

ready to turn over the elevator for operation. Inasmuch as he was not at that instant present, the janitor was requested to take charge of it and start it. The mere fact that respondent did not appear in the elevator until a few moments later, and the further fact that he was not, at the moment of his appearing, requested to enter the cage, we think cannot be said to raise any question as to his removal at that time from the scope of his employment. He was at his proper place, ready to assume the duties expected of him, and to which he had been called a moment before. In any event, however, the court did instruct the jury that, in order to find for the plaintiff, they must first find "that he was in the elevator at the time in the course of his employment." If there had been any evidence sufficient to raise this question, the above instruction submitted it to the jury. It was not error to refuse the requested instruction.

Error is further assigned upon the court's refusal to instruct, as it is alleged was requested, that, if the safety clutches did not work at the time of the accident, such fact was not proof of negligence unless it appeared that an inspection would have disclosed the reason of their failure to operate. No specific instruction is designated in the brief under this assignment, by number or otherwise, and we find no one among the requested instructions in the record which in express terms refers to the idea of lack of liability, in the event an inspection by appellant would not have revealed any defect in the clutching devices. While the court did say to the jury that the duty is upon the employer to inspect machinery provided for the employee in the conduct of his employment, yet it was further said that such duty was "to inspect in a reasonable way," and "to exercise reasonable care to ascertain whether or not the machinery used is in a rea-

sonably safe condition." Thus the rule given the jury as to inspection called for only reasonable care, and they could not have failed to understand that, if they found such reasonable care was exercised, and if certain defects could not thereby have been discovered, then there was no negligence as to such defects. We think, therefore, it should not be said, as argued, that the instructions left the jury to infer negligence from the mere fact that an accident happened. In this connection the following instruction was given:

"In order to find for the plaintiff, therefore, in this case, gentlemen, you must be able to ascertain from the evidence that the defendants, or one of them, were negligent as charged in the complaint, and you must be able to find from the evidence that there was some defect in this machinery as charged in the complaint, which was the proximate cause of the injuries the plaintiff sustained, if he sustained such injuries. If you should find that there were certain defects in this machinery, that alone would not be sufficient, unless you should find from the evidence that the injuries sustained by the plaintiff, if he did sustain any injuries, were sustained by reason of the existence of that particular defect. Some defective machinery might have been there that would not have been responsible for the accident that occurred, but you must be able to fix as the cause of this accident that it resulted from some defect in that machinery."

Thus it was made clear to the jury that they could not infer that the machinery was defective from the mere fact that the accident occurred, but that they must find from the evidence that there was some defect, and that it was the proximate cause of respondent's injuries.

It is next urged that the court erred in its instructions on the subject of assumption of risk. It is alleged that the instructions were to the effect that the servant assumes the risk of such dangers only as are known to him

at the time he enters the employment of the master. We fail to find any instruction which seems to be susceptible of the limited interpretation urged. The court plainly told the jury, in effect, that an employee assumes the risk of such defects as are known to him, and the significance of which he appreciates; that, by reason of the defect of which he has knowledge, he must, as a reasonable man, know that a danger will result to him. We think the instructions given upon this subject were not erroneous.

It is next complained that the court should have given appellant's requested instruction number 14, which was to the effect that the evidence as to negligence must be definite, and, if the testimony is uncertain in this respect, or shows that any one of different things might have brought about the injury, it is not the province of the jury to guess between the different causes, but they must find negligence from some specific individual showing. We think this ground was fully covered by the instruction hereinbefore quoted, and it was not error to refuse a further instruction embracing the same subject.

It is alleged that the court erred in allowing a witness for respondent to testify, over objection, concerning the custom in regard to testing elevators at the time they are installed. The court did not permit the witness to testify as to the custom, but expressly declined to do so. He was permitted as an expert to testify as to what is necessary to be done in the installation of elevators. The witness did testify that the safety appliances of this particular elevator were never tested at the factory, and were not tested when the machine was installed, but there was no objection to the question which called for such answer, and no motion was made to strike the testimony. The matter is, therefore, not reviewable here.

It is last urged that the court erred in allowing the verdict to stand, for the alleged reason that the amount, $1,350, is excessive. While it may not appear conclusively that permanent injuries were incurred, yet there was testimony to the effect that respondent was severely injured in his foot, and that the anatomy thereof is such that the injury may be troublesome for a long time. It was also shown that his vocation is now that of a carpenter, and that weakness in the foot may materially decrease his earning ability. Considering the evidence and the amount of the verdict, we think it does not appear that passion or prejudice prompted the amount. Under such circumstances we shall not disturb it. *Rush v. Spokane Falls & Northern R. Co.*, 23 Wash. 501, 63 Pac. 500.

We find no prejudicial error and the judgment is affirmed.

MOUNT, C. J., and FULLERTON and DUNBAR, JJ., concur.