# The Cumberland Valley Railroad Company *vs.* Maugans.

*Negligence— When the Court will not withdraw from the consideration of the Jury, the question of Negligence.*

A young man in vigorous health, strong, active, and in the full possession of all his physical and mental faculties, having a valise containing clothing, in his right hand, and a basket of provisions on his left arm, attempted in broad daylight, to leave a railway train while it was moving slowly, the distance from the lower step of the car to the platform being only eighteen inches, and in doing so was seriously injured. In an action of damages against the railroad company, it was HELD:

That under the circumstances, in voluntarily stepping from the car when it was in motion, and when he had not the free and unrestricted use of his hands and arms, the plaintiff was not guilty of such negligence as would justify the Court in taking the case from the consideration of the jury.

APPEAL from the Circuit Court for Washington County.

This was an action brought by the appellee to recover damages from the appellant for injuries he sustained through its negligence, while stepping from one of its cars at Green Castle, a station on its road. The plaintiff testified that he got upon a train of the defendant at Maugansville, where he resided, and paid his passage to Green Castle, a regular station on the defendant's road, in company with his mother, an unmarried sister, a married sister, with her husband and two children, aged four and six years; the two children and a valise containing the clothing of his married sister and two children, weighing from fifteen to twenty pounds, and a basket containing provisions for his sister and children, weighing from eight to twelve pounds, were under his charge, his sister's hus-

band having gone, before the train stopped, to the front car to look after his baggage, which the defendant refused to check, never having checked baggage from the Maugansville station; that as the train approached Green Castle, he carried said valise and basket to a short seat near the door of the car, preparatory to leaving, and took his position at the door with the children, with his hand upon the knob, and at the instant the train stopped, he opened the door and stepped one foot out on the platform and passed the children out on the platform of the car, where some one took them and helped them down; that he immediately turned around for the valise and basket, as he did so, his mother and sisters immediately followed the children out; that he picked up the valise and basket without delay, and started to go out of the car when he met at the door passengers coming in, which delayed him an instant, and as soon as possible he got upon the platform of the car in which he had been riding, with the intention of leaving the car, and in the act of leaving the car, with the basket on his left arm and the valise in his right hand, he then noticed that the train was beginning to move, and the steps of the platform of that car being full of persons, he stepped as rapidly as he could to the platform of the car in front, and from there down the steps on to the station platform, which was level with the track, while the train was in slow motion, it having moved ten or twelve, or probably fourteen feet from where it had been standing; in stepping from the last step of said car to the station platform, with the basket on his left arm, and valise in his right hand, while the train was in motion as aforesaid, he fell and was injured; that as he stepped from the platform of the car in which he had been riding, to the platform of the front car, he saw the brakeman and assistant ticket agent standing on the steps of that car; he said, "gentlemen, make room, I want to get off;" as he passed down the steps of that car, he passed the brakeman, who

was standing on the second step, and who said to him, "Why did you not get off sooner?" to which he replied, "Because I could not;" on the third or last step, stood the assistant ticket agent, and as he, plaintiff, passed him and was about stepping from the last step, he, the said ticket agent, placed his hand on plaintiff's shoulder, and said, "Be careful, you might fall;" plaintiff supposed he put his hand on him to assist him down; that he was prevented from taking hold of the railing of the car, because the brakeman and assistant ticket agent were standing on the steps, with their backs against the car; that the left hand of the arm on which he had the basket was free, with which he could have taken hold of the rail on that side if they had not been there, and he could have put the valise in the other hand, and would have had his right hand free if these men had not been on the steps; in forming the intention to get off the cars, and in the act of getting off, he used all the care and prudence he could, and he used all the haste and diligence he could in getting off; that he did not give any notice to any of the defendant's agents or employés, (except as before stated,) that he intended to get off the cars, and did not request them to stop the train after he found it was in motion; that he passed off the train as rapidly as he could; no one could have gotten off quicker; that his intention was to get off the train after he found it was in motion, and the action of the assistant ticket agent did not influence him in getting off the train; that the accident would not have occurred if he had not stepped off the train; and that it is more hazardous to attempt to get off a train with basket and valise than without them. And further, that neither the conductor nor brakeman were at the steps of the car, on the arrival of the train at Green Castle, to assist the passengers with their children and baggage from the cars; that passengers getting on were rushing in the cars before those destined for Green Castle had time to get off, and that plaintiff's

mother and sisters were crowded in getting down; that the brakeman who was standing on the step when plaintiff was getting off, did not offer to stop the train and let him off, nor did he tell plaintiff it was dangerous to attempt to leave the car at the time he was in the act of getting off, nor did the brakeman in any way assist, or offer to assist him in getting off, by relieving him of his baggage, or advising him as to how he should get off; that he did not know there was any danger in getting off the train whilst it was moving slowly, and that if he had known it was, he would not have gotten off.

The defendant offered evidence tending to prove that the assistant ticket agent was standing on the third or last step of the car, and that he did not notice the plaintiff until he was in the act of getting off the last car step on to the station platform, which was eighteen inches down from the last step; that the train had moved at least fifty feet from where it had first stopped; that there were eleven passengers let off the train at that station, and thirteen passengers got on the train before the cars started, and the train reached Green Castle on time.

Prayers were offered on both sides, but their insertion is deemed unnecessary. One of the prayers of the defendant, which the Court (ALVEY, J.,) rejected, was as follows:

9. That upon the undisputed facts in this case, the plaintiff has shown no ground of action, and therefore the verdict must be for the defendant.

The defendant excepted to the rulings of the Court, and appealed, the verdict and judgment being for the plaintiff.

The cause was argued before MILLER, YELLOTT, IRVING, and RITCHIE, J.

*John Stewart,* and *Geo. W. Smith, Jr.,* for the appellant.

The only question in this case is, was there such contributory negligence upon the part of the plaintiff in at-

tempting to hastily alight from the train, while it was in motion, encumbered, as he was, by baggage, and without the free use of his hands and arms, as to bar his recovery? The rule of law established in Maryland, governing cases of this character, has been clearly defined by this Court, in a number of cases, to be that, "It is incumbent on the plaintiff to prove that the injury was caused *entirely by the negligence or default of the defendant's agents*, and it must not appear from the evidence that want of ordinary care and prudence on the part of the deceased directly contributed to the cause," &c. *Stansbury's Case*, 54 *Md.*, 656; *Burns' Case*, 54 *Md.*, 119; *Foy's Case*, 47 *Md.*, 82.

If, therefore, this plaintiff has been guilty of a want of ordinary care and prudence which directly contributed to the cause of the injury he cannot recover. What is a want of ordinary care and prudence? It has been defined to be, such conduct as would be condemned as careless by men of common prudence. *Wills vs. B. & L. R. R.*, 129 *Mass.*, 351.

Would any man of common prudence attempt to hastily alight from a train of cars in motion, so encumbered with baggage that he had not the free use of his hands and arms to assist himself down a step eighteen inches to the station platform? The want of care and prudence consisted in attempting to get off under the circumstances, and not the care and prudence he may have exercised in jumping from the last step of the car to the station platform, which the plaintiff says is more hazardous to attempt with a basket and valise than without them.

In a large number of cases the Courts have decided that it is a want of ordinary care and prudence to attempt to leave a train while it is in motion, and as matter of law, say that a recovery cannot be had in such cases. *Jewell's Case*, 6 *Am. and Eng. R. R. Cases*, 379; *Nichols' Case*, 106 *Mass.*, 465. *Lucas' Case*, 6 *Gray*, 70, in which the Court says that the plaintiff, "by exercising ordinary care,

that is, by remaining in the car might have avoided the consequences of the defendant's negligence." See *Aspell's Case,* 23 *Penn. St.,* 149; *Lewis' Case,* 38 *Md.,* 598; *Nelson's Case,* 68 *Mo.,* 594; *State vs. B. & M. R. R. Co.,* 129 *Mass.,* 500; *Gavitt's Case,* 16 *Gray,* 502; *Morrison vs. Erie R. R. Co.,* 56 *N. Y.,* 302; *Burrows vs. The Erie R. R. Co.,* 63 *N. Y.,* 558.

While it may not be negligence *per se,* or want of ordinary care and prudence, in every case, to simply step off a car while it is in slow motion, yet when the descent from the car step to the station platform is considerable, and the person is encumbered with bundles or baggage, so as to deprive him of the free use of his hands and arms, with which he could otherwise support himself in getting down, the act becomes hazardous, and no prudent person would make the attempt.

The plaintiff's conduct, as disclosed by the proof, develops such a plain case of contributory negligence, as to bar his recovery.

The burden of proof was upon the plaintiff to show that the injury was caused by the negligence of the defendant's agents, and if he does show such negligence, it must not appear that the plaintiff, by any act of his, directly contributed to the cause of the injury.

*J. Clarence Lane,* and *H. H. Keedy,* for the appellee.

Whether the appellee was negligent, and thereby contributed to his injury, was a question of fact, and as such, was properly submitted to the jury. Courts are reluctant to withdraw cases from the consideration of the jury, and in order to justify them in doing so, the facts must be not only undisputed, but the inferences to be drawn from those facts must be such as to leave no room for ordinary minds to differ. If different minds can honestly draw different conclusions from them, the case should properly be left to the jury.

"The merchant, the· mechanic, the farmer, the laborer— these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw an unanimous conclusion. This average judgment, thus given, it is the great effort of the law to obtain." (HUNT, J., in *R. R. Co. vs. Stout,* 17 *Wall.,* 657;) *Balt. & Potomac R. R. Co. vs. State,* 54 *Md.,* 653 ; *Thompson on Negligence,* 1236 ; *Penna. Canal Co. vs. Bently,* 66 *Pa.,* 30 ; *Detroit & V. R. R. Co. vs. Van Steinburg,* 17 *Mich.,* 99 ; *Kay vs. Pa. R. R. Co.,* 65 *Pa.,* 273.

The facts and circumstances surrounding the act of the appellee in getting off the train—his knowledge, his situation, the motives which were operating upon his mind, must be taken into consideration in determining whether or not he was negligent in doing what he did. This is a question for the jury to determine, and so say all the authorities.

In 12 *Moak's English Reports,* 306, in the notes to the case of *Robson vs. North Eastern Railway Co.,* (*L. R.,* 10 *Q. B.,* 271,) the learned annotator says: "*It is not per se negligence for a passenger to alight when a train of cars is moving slowly,*" and cites therefor many authorities, the following amongst the number: *Johnson vs. West Chester & Phil. R. R. Co.,* 70 *Pa.,* 357 ; *Penna. R. R. Co. vs. Kilgore,* 32 *Pa.,* 202 ; *Doss vs. R. R. Co.,* 59 *Missouri,* 27 ; *Filer vs. N. Y. Cent. R. R. Co.,* 49 *N. Y.,* 47 ; *Lambeth vs. North Carolina, etc.,* 70 *N. C.,* 494 ; *R. R. Co. vs. Badeley,* 54 *Ill.,* 20 ; *Curtis vs. Detroit, etc.,* 27 *Wisc.,* 158. See also *Swigert vs. Han. & St. Jo. R. R. Co.,* 75 *Mo.,* 475 ; *Straus vs. Kansas City,* 75 *Mo.,* 185.

MILLER, J., delivered the opinion of the Court.

The plaintiff in this case was a passenger to Green Castle, an intermediate station on the defendant's road, and fell and was injured in leaving the cars at that station. He alleges, and, for the purpose of determining the single

question presented by this appeal, we shall assume it to be true, that those in charge of the train were negligent in starting it before time had been allowed for passengers to leave in safety. There can be no question as to the duty of the defendant in this respect. A railroad company undertaking the carriage of passengers to an intermediate point on its road is bound to stop its trains there a sufficient length of time to enable all passengers, whose destination is that point, to alight in safety.

But the undisputed facts are, that the train was in motion, and the plaintiff knew it was moving when he stepped from it, and that he had, at the time, a valise containing clothing which weighed from fifteen to twenty pounds, in his right hand, and a basket containing provisions which weighed from eight to twelve pounds on his left arm. It is not shown that he was directed or requested or encouraged thus to step from the car by any agent or employé of the company, or that he would have been in any peril if he had remained on the train, or that he was under any undue excitement or alarm. At the trial, it was contended that by thus voluntarily stepping from the car when he knew it was in motion, and when he had not the free and unrestricted use of his hands and arms, because of the luggage he was carrying, he was guilty of such negligence as would prevent a recovery, and that the Court should so declare, and direct a verdict for the defendant. The refusal of the Court below thus to take the case from the jury presents the only question that has been argued in this Court.

Counsel for the appellant have presented their side of the question with much ability and force of argument, but we cannot adopt their views of the case. We agree that while the question of negligence is ordinarily one of fact and not of law, cases do occur (and perhaps the number of such cases is increasing) in which it becomes the duty of the Court to interpose and withdraw them from the con-

sideration of the jury. The case however must be a very clear one to justify a Court in taking upon itself this responsibility; it must present some prominent and decisive act in regard to the effect and character of which no room is left for ordinary minds to differ. *Fitzpatrick's Case,* 35 *Md.* 46; *Stansbury's Case,* 54 *Md.* 655. Accidents occur, and injuries are inflicted under an almost infinite variety of circumstances, and it is quite impossible for the Courts to fix the standard of duty and conduct by a general and inflexible rule applicable to all cases, so that a departure from it can be pronounced negligence in law. The rule that requires a party before he crosses a railroad track to stop, look and listen for approaching trains, which has been generally adopted by the Courts, is the only one that approaches universality of application in reference to a particular class of accidents. But there is no such general accord of judicial opinion and precedent in reference to attempts to leave a car while it is in motion. The cases cited in the briefs of counsel on both sides show very clearly that the weight of authority is against the proposition that it is *always,* as matter of law, negligence and want of ordinary care for a person to attempt to get off from a car when it is in motion. This proposition was pressed upon the Court of Appeals of New York in the case of *Morrison vs. Erie Railway Co.,* 56 *N. Y.,* 302, but FOLGER, J., in delivering the opinion of the Court in that case, said, "were I disposed to accede to it upon principle, which I am not, I should feel myself precluded by prior decisions of this Court, and influenced to a contrary conclusion by those of other Courts. The rule established, and as I think the true one, is, that all the circumstances of each case must be considered in determining whether in that case, there was contributory negligence or want of ordinary care, and that it is not sound to select one prominent and important fact which may occur in many cases, and to say, that being present, there must, as matter of

law, have been contributory negligence. The circumstances vary infinitely, and always affect, and more or less control each other. Each must be duly weighed and relatively considered before the weight to be given to it is known."

In the present case counsel for the company rely solely upon the prominent fact that the plaintiff attempted to leave the train while it was in motion, and when he was so cumbered with luggage as not to be able to use the railing on either side of the car steps as a protection or aid in stepping to the platform, and they insist that such an act would be universally condemned by persons of ordinary intelligence and common prudence as culpable negligence or reckless carelessness. But there are other facts and circumstances which must be considered. The plaintiff testified (and for the purpose of the question we are considering, we must assume his testimony to be true) that at the time he made the step or jump, the train was in slow motion, not having moved more than fourteen feet from where it had been standing. The distance from the lower step of the car to the platform was but eighteen inches and it was broad daylight at the time. He was twenty-nine years of age on the day the accident happened, active, strong, and in vigorous health, and a blacksmith by occupation. In our judgment these circumstances have a very important bearing upon the question before us, for while it may be true that every one would pronounce it an act of reckless imprudence for a person to jump from a train of cars when in rapid motion, or at night and in the dark, when dangers or obstructions that could not be seen were in the way, or for a person of impaired health and in a weak physical condition, or of an advanced age to make the attempt when the train was in slow motion, we do not think the same unanimity of opinion would exist in reference to an attempt to step down eighteen inches to a platform from a train moving very slowly, made in broad

Cumberland Valley Railroad Co. *vs.* Maugans.

daylight by a young man in vigorous health, strong, active, and in the full possession of all his physical and mental faculties, even though he might have had a valise in one hand and a basket in the other. It is matter of common observation and experience that those who are young, healthy and vigorous, frequently do acts and assume risks which it would be culpable negligence in others of feeble health or advanced age to attempt. At all events we are clearly of opinion that whether there was negligence or want of ordinary care in the conduct and acts of the plaintiff under all the circumstances of this case, is a question in regard to which reasonable men may honestly entertain different views. This being so, it follows that we must sustain the refusal of the Court below to withdraw the case from the consideration of the jury, for, as has been well said by COOLEY, C. J., in *Van Stimburg's Case*, 17 *Mich.*, 99, "When the question arises upon a state of facts on which reasonable men may fairly arrive at different conclusions, the fact of negligence cannot be determined until one or the other of these conclusions has been drawn by the jury. The inferences to be drawn from the evidence must either be certain and incontrovertible, or they cannot be decided upon by the Court. Negligence cannot be conclusively established by a state of facts upon which fair minded men may well differ."

This disposes of the only controversy in the case, as no objection has been urged to the rulings of the Court, made upon the assumption that the question of negligence was to be left to the jury, and it follows that the judgment must be affirmed.

*Judgment affirmed.*

(Decided 19th December, 1883.)