# DANIEL DONNELLY & SON *vs.* DAVID M. NEWBOLD.

*Guaranty—Original or Collateral Undertaking—Notice of Default to Guarantor—Instructions to the Jury.*

Defendant wrote to the plaintiff as follows: "Mr. S., who is building a number of houses on ground I leased him, tells me you have agreed to furnish him 100,000 bricks on the following terms. * * You can furnish Mr. S. on these terms and if he does not pay you, I will." The bricks were delivered to S. by the plaintiff and one-half of them were not paid for. In an action on the guaranty the evidence was conflicting as to whether the sale to S. had been made on the faith of the guaranty or afterwards. Defendant was not notified of S.'s default until nearly three years after 'it occured and after he had paid certain sums of money to S. *Held,*

1st. That the language of the guaranty could be construed as creating either an original or collateral undertaking on the part of the defendant, and it should receive that construction which will carry out the intention of the parties as shown by the evidence.

2nd. That if the guaranty was an original agreement by the defendant, he was not entitled to notice of the default of S. in the matter of payment, but if it was collateral to S.'s previously made contract for the purchase of the bricks, then defendant was entitled to notice within a reasonable time of the default, and if such notice was not given, defendant would be released from liability under the guaranty to the extent of any loss suffered by him on account of the failure to receive such notice.

3rd. That it was error in the trial Court to rule as matter of law that the guaranty was a collateral undertaking and that the defendant was entitled to notice of S.'s default in making payment.

4th. That the jury should have been instructed that if it was found that the bricks were sold in reliance upon the guaranty and the credit of the defendant, his undertaking was original, but if the sale had been upon the credit of S., then it was merely a collateral guaranty.

Appeal from the Superior Court of Baltimore City. (SHARP, J.)

The cause was submitted to the Court on briefs by:
*Luther M. Reynolds, George R. Willis* and *Edward A. Donnelly,* for the appellant.

*Thomas Ireland Elliott,* for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appellants sued the appellee in *assumpsit* in the Superior Court of Baltimore City upon his written guaranty hereinafter mentioned. The declaration contained the common money counts and a special count on the guaranty.

The appellee pleaded *nil debet, non assumpsit* and, by way of further plea, that the guaranty declared on was a collateral one under which he as guarantor was entitled to prompt notice of the default of one Jacob A. Smith who was the principal debtor, but that he had not received such notice until nearly three years after the default, wherefore and because the plaintiff, in making the sale which formed the subject of the guaranty had looked entirely to said Smith and not to the defendant the latter was discharged from all liability thereunder.

The case was tried before the Court without a jury and the verdict and judgment were for the defendant.

The guaranty was a letter addressed by the appellee to the appellants and the material portion of it was as follows:

"Dec. 28th, 1896.

D. DONNELLY & SONS,
          Baltimore, Md.

*Gentlemen :*—Mr. Jacob A. Smith who is building a number of houses on ground I leased him tells me you have agreed to furnish him one hundred thousand (100,000) brick delivered at 6.25 on the following terms, the first fifty thousand (50,000) to be paid for as soon as delivered, the other to be paid for four months after the completion, and you can furnish Mr. Smith on these terms and if he does not pay you I will."

The declaration alleges that the appellants when applied to by Smith to sell him the bricks refused to do so unless the appellee, who was interested in the land on which houses were to be built with the bricks, would guarantee the payment for them, and that the appellants delivered the bricks only after the receipt of the guaranty and in reliance thereon.

The evidence in the case was very conflicting and to some extent evasive.    Part of it supported the averments of the declaration while other portions of it tended to prove that the sale of bricks was not made upon the faith of the guaranty but that it had been made by the appellants to Smith and some of the bricks had been delivered to him before the letter containing the guaranty was written. . There was evidence tending to prove that the appellee was not informed of Smith's default in paying for the bricks until nearly three years after its occurrence and that in the meantime he had paid away enough of Smith's money to have satisfied the plaintiffs' claim, and there was other evidence tending to show that he knew of the default at the time of its occurrence.

The entire 100,000 bricks were delivered by the appellants to Smith and the first 50,000 were paid for.   The suit is for the price of the second 50,000 less a small credit thereon.

The record contains but one bill of exceptions which brings up for review the action of the Court below in refusing the plaintiffs' second prayer and granting both of the defendant's prayers.

The fundamental question in the case is whether the guaranty sued on is to be regarded as an original undertaking by the appellee upon the faith of which the bricks were sold to Smith by the appellants or is to be taken and considered as a collateral guaranty of the performance by Smith of a contract, to purchase and pay for the bricks, which had already been closed between the appellants and him when the guaranty was given.    In either event the guaranty would rest upon a sufficient consideration for in the first case it would have formed the inducement which led the appellants to make the sale, and even in the second case the fact which appears on the face of the guaranty that the appellee was interested in the land which was to be improved by the use of the bricks constituted a consideration sufficient to support the guaranty.

The practical difference for the purposes of the present suit is that if the undertaking of the appellee is to be regarded as an original one the appellants were under no obligation to

give him notice of the default of Smith in not paying for the last 50,000 bricks. *Heyman* v. *Dooley*, 77 Md. 169.

If, on the other hand, the appellee's agreement was collateral to Smith's previously made contract for the purchase of the bricks and was to become binding only upon condition that the latter failed to perform his contract, then the appellee was entitled to notice within a reasonable time of Smith's default, and if he did not receive such notice either from the appellants or from other sources he would be released from obligations under his guaranty, to the extent of any loss suffered by him by reason of the failure to receive the notice. *Davis* v. *Wells, Fargo & Co.*, 104 U. S. 169-170. See also cases collected in foot note to *Heyman* v. *Dooley* as reported in 20 L. R. A. 263 *et seq.* and 2nd ed. of *Am. & Eng. Ency. of Law*, vol. 14, p. 1151.

The language employed in the instrument in question is somewhat equivocal and does not of itself clearly determine what was intended to be its character. Its opening expressions suggest an existing agreement on the part of the appellants to sell the bricks to Smith to which the guaranty was to be collateral, but the closing statement, "you can furnish Mr. Smith on these terms and if he does not pay you I will," are strongly indicative of a knowledge on the part of the appellee that his undertaking was to constitute the inducement which would lead the appellants to part with the possession of the bricks. In this state of the record the agreement under consideration must be given such a construction as will carry out the intention of the parties to the transaction of which it forms a part. In *Hooper* v. *Hooper*, 81 Md. 169, this Court in discussing the true effect of a written guaranty said : "A guaranty is a mercantile instrument to be construed according to what is fairly to be presumed to have been the understanding of the parties without any strict technical accuracy, but in furtherance of its spirit and liberally to promote the use and convenience of commercial intercourse. It should be given that effect which will best accord with the intention of the parties as manifested by the terms of the guaranty

taken in connection with the subject-matter to which it re-
lates, and neither enlarging the words beyond their natural
import in favor of the creditor nor restricting them in aid of
the surety. The circumstances accompanying the whole trans-
action may be looked to in ascertaining the understanding of
the parties. *Lee* v. *Dick,* 10 Pet. 482; *Mauran* v. *Bullus,* 16
Pet. 528; *Bell* v. *Bruen,* 1 How. 169; *Davis* v. *Wells, Fargo
& Co.,* 104 U. S. 159; *Mussey* v. *Rayner,* 22 Pick. 228."

The question whether a guaranty, whose terms admitted of
a construction which would make it original and also of one
which would make it collateral, was to be regarded as of the
former or later class has several times been before this Court
for consideration. Our predecessors held that in order to de-
termine whether the guarantor's undertaking was an original
or a collateral one, the question as to whom the credit was
given at the time of the sale and delivery of the goods should
be submitted to the jury and if they found that it was given
to the guarantor his uudertaking should be held to have been
original, even if no charge was made against him in that con-
nection on the books of the vendor, but that it should be held
to have been collateral if the jury found that the credit was
given to the purchaser instead of the guarantor. *Myer &
Ewalt* v. *Grafflin,* 31 Md. 350; *Boyd & Ricketts* v. *Snyder,* 49
Md. 343; *Caton* v. *Shaw,* 2 H. & G. 13, 25.

In the case of *Heyman* v. *Dooley, supra,* which was much
relied on by the appellant, it appeared from the record that
the guaranty which was treated as an original one and the con-
tract the performance of which was guaranteed by it were
written upon the same paper and were delivered at the same
time and together constituted the inducement to the vendor
to make the sale.

We think, therefore, that in the present case the learned
Judge below should not have granted any prayer which in
effect asserted as a mere matter of law either that the guaranty
sued on was an original undertaking or that it was a collateral
guaranty. His instruction in that respect should have been
predicated upon the finding by the jury, or by the Court as a

matter of fact, upon whose credit the bricks mentioned in the guaranty were sold and delivered by the appellants, and he should have ruled that if it was found that they were sold and delivered in reliance upon the guaranty and the credit of the appellee as guarantor, his undertaking was to be treated as an original one, but if the sale and delivery had been upon the credit of Smith, the purchaser, then it was merely a collateral guaranty.

Tested by these principles both of the defendants' prayers, which the Court granted were erroneous, the first because it categorically asserted as a matter of law that the guaranty sued on "was a collateral undertaking," and the second, which was in effect a corrollary to the first ; because it held that the appellee was entitled as guarantor to notice of Smith's default in paying for the bricks.

The plaintiff's second prayer was properly rejected because it proceeds throughout upon the assumption that the guaranty sued on bound the appellee as an original undertaking, without requiring any finding of fact in reference to whose credit was relied on in making the sale and delivery of the bricks.

The judgment appealed from must be reversed because of the error in granting the defendants' prayers.

*Judgment reversed with costs and new trial granted.*